IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LEOPOLD O.V. ENWONWU, | : | CIVIL ACTION NO. |
| | : | 1:16-CV-0797-WSD-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FULTON COUNTY MARSHAL, *et al.*, | : | **ORDER AND FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff Leopold O.V. Enwonwu, proceeding *pro se*, filed this action on March 7, 2016. Plaintiff claims that he and his family were wrongfully evicted from their home in Roswell, Georgia, and that Defendants, a bank, a judge, a law firm, and the Fulton County Marshals, conspired to evict him. Compl. [11] at 9-10.

The action is now before the Court on the Motion to Dismiss [33] filed by Defendants Aldridge Pite, LLP ("Aldridge Pite"), John G. Aldridge, Kimberly A. Rizzotti Weber, and Allison S. Giardina (collectively the "Aldridge Defendants"); the Motion to Dismiss Plaintiff's Complaint [38] filed by Wells Fargo, N.A. ("Wells Fargo"); and the Motion to Dismiss Plaintiff's Complaint [39] filed by Defendants Fulton County Marshal, Lieutenant P. Johnston, and Louis Levenson (collectively the "Motions to Dismiss").

For the reasons discussed below, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [33][38][39] be **GRANTED**, and that this action be

**DISMISSED** in its entirety. The undersigned **RECOMMENDS** that all claims against Defendants Fulton County Marshal, Wells Fargo Bank, Aldridge Pite, Louis Levenson, John G. Aldridge, Kimberly A. Rizzotti Weber, Allison S. Giardina, and Lieutenant P. Johnston be **DISMISSED** for failure to state a claim for relief under Rule 12(b)(6). Additionally, but for Plaintiff's Fair Credit Reporting Act ("FCRA") and 42 U.S.C. section 1983 claims, Plaintiff's Complaint is barred by the *Rooker-Feldman* doctrine. In sum, the Court concludes that, as a matter of law, the Plaintiffs have failed to assert sufficient facts to state a plausible claim for relief under any of the legal theories presented in the Complaint.

The action is also before the Court on the following motions filed by the Plaintiff: the "Motion for an Order of Court that the Parties Engage in Discovery" [45] and the "Motion for an Order Extending or Enlarging the Time Within Which the Plaintiff May Respond to the Motions to the [sic] Dismiss Brought by the Defendants" [46]. For the reasons discussed below, Plaintiff's Motions [45] [46] are **DENIED** as moot.

## I.    BACKGROUND

Plaintiff Leopold O.V. Enwonwu filed the Complaint against eight named Defendants on May 20, 2016. *See* Compl. [11]. Plaintiff's Complaint is based on what he alleges to be a wrongful eviction and foreclosure action in which multiple parties,

including the state court judge who issued the eviction order, conspired against him to take his home. The allegations below are taken from Plaintiff's Complaint [11].

Plaintiff's Complaint contains allegations explaining who the various Defendants are and spends some time recounting the procedural history of two separate actions, related to the same property, that took place in state court. *See* Compl. [11] at ¶¶ 5-13, 15, 17, 19. Plaintiff's discussion of the state court case(s) is unclear and incomplete, but Plaintiff's allegations are essentially as follows.

First, Plaintiff alleges that he "is a Black male, a U.S. citizen of Nigerian national origin on Social Security . . . who at all times material to instant action was jointly with his sons . . . in possession of the property . . . described as 1950 Branch Valley Drive, Roswell, Fulton County, Georgia." *Id.* at ¶ 4. According to Plaintiff, "Louis Levenson was a part-time Pro Hac Judge of the State Court of Fulton County and was also the Magistrate Court judge for dispossessory/landlord and tenant cases." *Id.* at ¶ 7. Defendants John G. Aldridge, Kimberly A. Rizzotti Weber, and Allison S. Giardina "were . . . attorneys-at-law employed by" the "Aldridge Connors law firm." *Id.* at ¶ 9. Aldridge Connors (now Aldridge Pite) was the law firm that, on behalf of Wells Fargo, provided notice of the scheduled foreclosure sale. *Id.* at 20. Furthermore, Plaintiff alleges that Defendant "Lieutenant P. Johnston . . . is an employee of the Fulton County Marshal's department." *Id.* at ¶ 10.

3

Plaintiff alleges that "[o]n October 2, 2012 Plaintiff's appeal from the judgment of the Magistrate Court . . . had been docketed, de novo, in the Superior Court of Fulton County as CAFN 2012CV222250." *Id.* at ¶ 19. Then, "[o]n December 7, 2012, the Superior Court of Fulton County, Georgia entered an order dated December 6, 2012 by Judge Campbell dismissing the de novo appeal in Civil Action File No. 2012CV222250 – *Wells Fargo Bank, NA, et al., v. Edith Enwonwu, Leopold Enwonwu and all others*." *Id.* at ¶ 11. Plaintiff attached this Order to the Complaint. *See id.* at 18. From Plaintiff's own attachment, it appears that Wells Fargo had initiated a dispossessory action against Plaintiff in the Magistrate Court of Fulton County and was granted default judgment. *See id.* Then, Plaintiff sought to appeal the default judgment, and the state court dismissed the action because "no appeal lies from a default judgment in Magistrate Court." *Id.* Plaintiff alleges that "Louis Levenson, [Judge of the Fulton County State/Magistrate Court(s) as he then was], lost the default judgment he had entered in favor of Wells Fargo in denial of herein Plaintiff's due process right to proper hearing notice." *Id.* at ¶ 21 (brackets in original).

Plaintiff further states that "[t]he Superior Court also entered a Final order, which granted the motions to dismiss brought by the Defendant in Civil Action File No. 2011CV207330 – *Leopold Enwonwu v. Wells Fargo Bank, NA, et al.*," *id.* at ¶ 12, and attached a copy of the Order as Exhibit 3, *id.* at 19. Plaintiff's attachment shows

that Plaintiff had alleged a claim of wrongful foreclosure because "(1) he did not execute the security deed; (2) notice was improper; and (3) the original deed and/or note have not been produced." *Id.* at 20. Because both Plaintiff and Defendants "supported their motion with evidence outside their original pleadings," the state court judge "converted Wells Fargo's Motion to Dismiss to a Motion for Summary Judgment" and found that there were no genuine issues of material fact, granting Wells Fargo's Motion for Summary Judgment. *Id.* at 20-21.

Plaintiff alleges that "[i]n granting the motions to dismiss brought by the Defendants in [case number] 2012CV207330, the Superior Court had placed reliance on the false Affidavit of William Eve Fair III, who claimed to be the closing attorney to the purported 2009 mortgage by Avelo Mortgage, LLC." *Id.* at ¶ 13. However, Plaintiff alleges that the affidavit is "a fraud" because the "signature . . . differed materially" and "William Eve Fair III could not have been the closing attorney as he did not drafted [sic], neither did he have possession or custody of the purported mortgage documents." *Id.* at ¶ 14. Plaintiff continues to explain the procedural history of the state court case (number "2011CV207330"), alleging that he "filed a timely notice of appeal as well as . . . served a poverty affidavit." *Id.* at ¶¶ 15-16. Plaintiff claims that "[o]n July 25, 2014, the Superior Court ruled on the motion by Baker

Donelson & Co." *Id.* at ¶ 17. Apparently, Baker Donelson are Wells Fargo's attorneys. *See id.* at ¶ 6. According to Plaintiff, the poverty affidavit was granted. *Id.* at ¶ 17.

Plaintiff claims that "[o]n or about November 6, 2013, without jurisdiction and/or a judgment to enforce, Louis Levenson conspired with the attorneys of the law firm of Aldridge Connors[1] to willfully interfere with and deny Plaintiff's due process right of appeal by issuing a void order to effectuate the wrongful and unlawful eviction of Plaintiff's premises." *Id.* at ¶ 22. Plaintiff alleges that the order "was void as there was no case then pending in [Judge Levenson's] court between the parties." *Id.* Furthermore, "the Superior Court had dismissed CAFN: 2012CV222250, while Plaintiff had appealed CAFN: 2011CV207330." *Id.* Plaintiff contends that "Wells Fargo was obligated to firstly reinstitute proceedings to recover possession of property following exercise of a power of sale under a deed of mortgage as is mandated by OCGA §§ 44-14-161 et seq." *Id.* Moreover, Plaintiff alleges that "Defendants were precluded by public policy from evicting Plaintiff's premises as following the judgment in CAFN: 2011CV207330, the Social Security Administration withhold from Plaintiff's monthly stipend the sum of $260.33 for occupation of the premises." *Id.* Plaintiff requests the "Court . . . take judicial notice that on July 25, 2014 the Superior Court of Fulton County determined that Plaintiff's timely filing of notice of

---

[1]Aldridge Connors, LLP has since become Aldridge Pite, LLP.

appeal and as Wells Fargo failed to effectively traverse Plaintiff's poverty affidavit, it constituted supersedeas in satisfaction of the appeal bond set by the judgment in CAFN: 2011CV207330." *Id.*

Plaintiff alleges that he was "wrongfully evict[ed] . . . on December 12, 2013 from the premises at 1950 Branch Valley Drive, Roswell, Georgia 30076," *id.* at ¶ 16, and the eviction constituted a "knowing[] and malicious[] interfere[nce] with Plaintiff's right of appeal," *id.* at ¶ 23. Specifically, Plaintiff alleges that "[a]t the instance [sic] of the Defendants, Lieutenant Johnston leading other officers from the Fulton County Marshal's department knocked on the door and demanded entry into Plaintiff's home in the name of the State of Georgia at about 7 a.m. on December 12, 2013; and ready to use force, if necessary." *Id.* at ¶ 25. Plaintiff then "opened the door, protesting the fact that the eviction was wrongful . . . [but] Plaintiff's protest fell on deaf ears." *Id.* at ¶ 26. Thereafter, "Plaintiff was afforded the choice of one set of clothing, then told to get the other residents to step outside the house" and "the Wells Fargo eviction crew . . . took over the removal and wanton destruction of Plaintiff's property." *Id.* at ¶ 27. Plaintiff "suffer[ed] the loss of property both real and personal, including value papers and certificates collected over decades, resulting in emotional distress and harm." *Id.* at ¶ 28.

Plaintiff alleges that he "awoke on or about January 10, 2014 in a bedroom at the UMass Memorial Hospital, in Worcester, Massachusetts" and "was informed by the hospital staff that as a result of the strain, he had suffered congestive heart failure." *Id.* at ¶ 29. Plaintiff claims he "incurred additional costs and loss of valuable time at the Beaumont Rehabilitation Center . . . where he lived for the next 7 (seven) months; firstly, learning to use a wheelchair, then learning to use a walker, thereafter graduating to using a cane." *Id.* at ¶ 30. Plaintiff "continues to use a . . . walker, and continues to require dialysis treatment . . . as he has since lost the functioning of his kidneys." *Id.*

After "the Superior Court order of July 25, 2014 Plaintiff sought to but could not resume habitation of the premises because the Defendant had maliciously removed the immovable and/or fixtures from the house." *Id.* at ¶ 31. Furthermore, Plaintiff alleges that "Defendant failed to keep the property and premises in good repair, as a result of which, the house has since become a hangout for vagrants and drug users." *Id.* at ¶ 33. Plaintiff claims that "[a]s a direct consequence of the various wrongful acts of the Defendants, Plaintiff has lost property, real and personal, including valuable and irreplaceable papers, and has suffered physical harm and emotional distress." *Id.* at ¶ 38.

Finally, Plaintiff alleges that "Defendants maliciously published in Plaintiff's national consumer credit reports that Plaintiff defaulted in the loan they conceded was made to Edith Enwonwu, alone" in violation of the FCRA, "15 U.S.C. § 1681 et seq." *Id.* at ¶ 35. Plaintiff further alleges that "Defendants . . . were aware that Plaintiff complied with the due process procedure mandated under OCGA § 5-6-47(b) . . . for preservation of the status quo pending appeal." *Id.* at ¶ 36. Furthermore, "Defendants . . . were aware of the objections and opposition to Plaintiff's poverty affidavit by Baker Donelson & Co." *Id.* at ¶ 38.

Plaintiff's Complaint asserts only three enumerated counts. In Count I, Plaintiff asserts a claim for "Conspiracy by the Defendants and Denial of the Plaintiff's Right to Due Process and Equal Protection Under the Law in Violation of 42 U.S.C. §§ 1981, 1985, and 1986." *Id.* at 8, at ¶¶ 18-23.

In Count II, Plaintiff asserts a claim for "Conspiracy Trespass, Malicious Eviction, Search and Siezure [sic] of Plaintiff's Property by the Defendants in Violation of 42 U.S.C. §§ 1982, 1985 and 1986." *Id.* at 11, at ¶¶ 24-34. The Court interprets Count II as asserting two additional claims that are not explicitly enumerated: (1) a violation of 42 U.S.C. § 1983 and (2) trespass under Georgia tort law.

In Count III, Plaintiff asserts a claim for "Conspiracy by the Defendants and the Wilful [sic] Publication of Falsehood in Plaintiff's Credit Reports in Violation 15 U.S.C. §§ 1681 et seq." *Id.* at 14, at ¶¶ 35-38.

Finally, Plaintiff requests "damages for the loss of the use of his real property . . . punitive damages . . . triple damages . . . and attorney fees and costs." *Id.* at ¶ 39.

## II. DISCUSSION

The Defendants have filed Motions to Dismiss asserting multiple jurisdictional defenses and arguing that, notwithstanding the jurisdictional defects, Plaintiff has failed to state a plausible claim for relief. The Court agrees with Defendants that Plaintiff's Complaint must be dismissed in its entirety under Rule 12(b)(6). Furthermore, the Court finds that it does not have subject matter jurisdiction over Plaintiff's Count I claims or its Georgia state law claim for trespass.

### A.   *Standard on a Motion to Dismiss*

The Defendants have filed Motions to Dismiss, arguing that all of the Plaintiff's claims asserted in the Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim for relief. When evaluating a motion to dismiss under Rule 12(b)(6), the Court generally cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

Iqbal went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (*quoting* FED. R. CIV. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because the Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Even though a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

    As noted above, a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a plaintiff has referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a motion to dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal.").

Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), FED. R. CIV. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.") (citation omitted); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

In this case, the Plaintiff has referred to various documents in the Complaint and states that such documents are attached as exhibits. *See, e.g.,* Compl. [11] at ¶¶ 11 (referring to "Enwonwu's Exhibit 2"), 12 (referring to "Enwonwu's Exhibit 3"), 14

13

(referring to "Enwonwu's Exhibit 4"), 17 (citing to "Enwonwu's Exhibit 5"), 35 (referring to "Enwonwu's Exhibit 7"). Although Plaintiff nowhere marked any of the attached documents as Exhibit 7, Plaintiff does attach the Security Deed on the Property dated January 20, 2009 ("Security Deed"), which shows that Plaintiff was one of the borrowers on the mortgage loan, along with Edith Enwonwu. *See* Compl. [11] at 27-34.

The Aldridge Defendants submitted exhibits attached to their Answers [29] [30] [31] [32][2], which are referenced throughout their Motion to Dismiss [33].[3] These exhibits include the Deed Under Power conveying the property at issue to Wells Fargo [29-1], the Order and Judgment issued in the Magistrate Court of Fulton County with the writ of possession issued to Wells Fargo [29-2], the Magistrate Court of Fulton County's denial of Plaintiff's Motion to Vacate the Default Order [29-3], the Superior Court of Fulton County's Order granting Wells Fargo's Motion to Compel Payment of Rent [29-4], the Final Order in the Superior Court of Fulton County Civil Action

---

[2]All four answers submitted by the Aldridge Defendants contain the same nine attached exhibits.

[3]The Aldridge Defendants claim that all facts in their Motion to Dismiss are derived from Plaintiff's Complaint, in an apparent attempt to counter Plaintiff's argument that the Motions to Dismiss should be treated as Motions for Summary Judgment. Whether true or not, the Court, as explained below, may consider their exhibits.

File Number 2012CV222250 dismissing the action because no appeal lies from a default judgment in Magistrate Court [29-5], the Court of Appeals of the State of Georgia Order dismissing Plaintiff's appeal of the dispossessory action [29-6], the Supreme Court of Georgia's Order denying Plaintiff's petition for certiorari [29-7], the Superior Court of Fulton County's Final Order granting Wells Fargo summary judgment on Plaintiff's wrongful foreclosure claim [29-8], and the Superior Court of Fulton County's Order dismissing Plaintiff's Notice of Appeal [29-9].

Defendant Wells Fargo also submitted exhibits in connection with its Motion to Dismiss. These exhibits include the Security Deed on the Property dated January 20, 2009 (Exhibit A) [38-2], the August 3, 2011 assignment of the Security Deed from Mortgage Electronic Registration Systems, Inc. ("MERS") to Wells Fargo ("Assignment") (Exhibit B) [38-3][4], the Deed Under Power conveying the property at issue to Wells Fargo (Exhibit C) [38-4], the Order and Judgment issued in the Magistrate Court of Fulton County with the writ of possession issued to Wells Fargo (Exhibit D) [38-5], the Magistrate Court of Fulton County's denial of Plaintiff's Motion to Vacate the Default Order (Exhibit E) [38-6], the Superior Court of Fulton

---

[4]Exhibits A and B are the only two exhibits Defendant Wells Fargo includes that the Aldridge Defendants did not include in their Answers. The rest of the exhibits are attachments in both Defendant Wells Fargo's Motion to Dismiss and the Aldridge Defendants' Motion to Dismiss.

County's Order granting Wells Fargo's Motion to Compel Payment of Rent (Exhibit F) [38-7], the Final Order in the Superior Court of Fulton County Civil Action File Number 2012CV222250 dismissing the action because no appeal lies from a default judgment in Magistrate Court (Exhibit G) [38-8], the Court of Appeals of the State of Georgia Order dismissing Plaintiff's appeal of the dispossessory action (Exhibit H) [38-9], the Supreme Court of Georgia's Order denying Plaintiff's petition for certiorari (Exhibit I) [38-10], the Superior Court of Fulton County's Final Order granting Wells Fargo summary judgment on Plaintiff's wrongful foreclosure claim (Exhibit J) [38-11], and the Superior Court of Fulton County's Order dismissing Plaintiff's Notice of Appeal (Exhibit K) [38-12].

"[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). *See also Tuscano v. Evening Journal Ass'n*, 179 F. App'x 621, 623 n.3 (11th Cir. 2006) ("Although the district court's order relating to this prior litigation is not part of the record on appeal, we may take judicial notice of it.") (*citing Young v. City of Augusta, Ga, Through DeVaney*, 59 F.3d 1160, 1166 n. 11 (11th Cir. 1995) (explaining that a court may take judicial notice of another court order, at least for the limited purpose of recognizing the judicial action taken or the subject matter of the litigation)).

In addition, when a court is considering a motion to dismiss under Rule 12(b)(6), documents attached to the motion to dismiss may be considered if the document is both central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*."). "'Undisputed' means that the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276.

In this case, Plaintiff attached the Security Deed as an exhibit to his Complaint. Plaintiff also attached numerous exhibits from the previously filed state court actions and referred to those cases throughout his Complaint. Furthermore, in attaching "Enwonwu's Exhibit 3," Plaintiff references the Assignment and Deed Under Power. *See* Compl. [11] at 19. Therefore, because the Security Deed, Assignment, Deed Under Power, and the documents from state court explaining the procedural history of Plaintiff's previously filed actions against Defendants are central to Plaintiff's claims in this case, because Plaintiff has not challenged the authenticity of those documents, and because Plaintiff references the state court actions within his Complaint, the Security Deed and documents from state court may be considered as

17

part of the pleadings in this case in resolving the Motions to Dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).[5] Furthermore, the Court may take judicial notice of the state court's orders to recognize what the previous orders represent and to determine the subject matter of the previous litigation.

### B.    *Rooker-Feldman*

All Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine because Plaintiff is essentially inviting this Court to review and reject a state court judgment. Plaintiff does not address this argument in his response to the Motions to Dismiss [47].[6] However, because Plaintiff is proceeding *pro se*, the Court has considered the substance of the

---

[5] Plaintiff filed a Response [47] objecting to Defendants' Motions to Dismiss on the grounds that Defendants "have pleaded and relied on new facts." Resp. [47] at 1. Plaintiff's Response "requests that the respective motion [sic] be treated as motions for summary judgment." *Id.* at 2. The Aldridge Defendants filed their Motion to Dismiss [33] on August 2, 2016 and Defendants Wells Fargo and Fulton County Marshal, Louis Levenson, and Lieutenant P. Johnston filed their Motions to Dismiss [38] [39] on August 16, 2016. Plaintiff's Responses were due August 19, 2016 and September 2, 2016, respectively. Without waiting for leave of the Court, Plaintiff filed the Response on September 29, 2016. Not only was Plaintiff's Response untimely, but it does not dispute the authenticity of any of Defendants' exhibits.

[6] Although Plaintiff's Response was untimely, in the interest of liberality because Plaintiff is *pro se*, the Court has considered it anyway. However, the Response does nothing to sustain Plaintiff's claims.

Defendants' arguments and finds that *Rooker-Feldman* is not wholly applicable in this case.

"The *Rooker-Feldman* doctrine bars lower federal court jurisdiction where four criteria are met: '(1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.'" *Christophe v. Morris*, 198 F. App'x 818, 824 (11th Cir. 2006) (quoting *Storck v. City of Coral Springs*, 354 F.3d 1307, 1310 n. 1 (11th Cir. 2003). "[T]he 'party' that matters is the plaintiff." *Id.* at 824-25 (citing *Amos v. Glynn County Bd. of Tax Asssessors*, 347 F.3d 1249, 1265 n. 11 (11th Cir. 2003); *Roe v. State of Ala. By and Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995); *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). Moreover, "[a] federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* at 825 (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (quotation marks omitted). The doctrine, however, "does not apply if the plaintiff had no 'reasonable

opportunity to raise his federal claim in state proceedings.'" *Id.* (quoting *Goodman*, 259 F.3d at 1332).

In *Christophe v. Morris*, 198 F. App'x 818, 819 (11th Cir. 2006), the Eleventh Circuit considered an appeal from a *pro se* plaintiff whose claims had been dismissed for lack of jurisdiction under *Rooker-Feldman*. In that case, the plaintiff had entered into a lease with the property owner. *Id.* at 820. After a dispute between the plaintiff and the owner, the owner initiated a dispossessory proceeding in state court alleging that the plaintiff had failed to pay rent and made unauthorized alterations. *Id.* The plaintiff filed an answer and counterclaimed for harassment, slander, and defamation. *Id.* Eventually, the case was heard before a state court judge, who ruled against the plaintiff. *Id.* Soon thereafter, the property owner, accompanied by a Sheriff's deputy and moving company workers, served the plaintiff with what the plaintiff alleged to be "a false 'writ to vacate.'" *Id.* The Sheriff's deputy told the plaintiff that she was being evicted, then told the moving company workers to remove all of the plaintiff's possessions and place them on the front lawn. *Id.* The plaintiff was not, however, allowed to remove a chandelier from the premises. *Id.* The plaintiff "apparently tried to appeal" in the state court system "but did so improperly." *Id.* at 823. The plaintiff then brought suit in federal court against the property owners, the Sheriff's deputy, the

moving company workers, and others alleging violations of 42 U.S.C. sections 1983, 1985, and 1981, and trespass, among other claims. *Id.* at 819-21.

The *Christophe* plaintiff was deemed to have abandoned all but her section 1983 claims by the time she appealed to the Eleventh Circuit. *Id.* at 824. The Court determined that "[t]o the extent Christophe's complaint was construed as a challenge to the state court's ruling that she violated her lease, and, therefore, that the landlord was legally permitted to an order of eviction or dispossession, the district court properly dismissed the complaint under the *Rooker-Feldman* doctrine." *Id.* at 825. However, the Eleventh Circuit went on to give "a closer reading and liberal construction of [the plaintiff's] *pro se* complaint," and determined that the plaintiff was both "challenging the order of eviction" and "also claiming that her constitutional rights were violated, not by the fact of the eviction ruling, but by the manner in which the eviction itself was carried out at the direction of the Sheriff's office." *Id.* at 825-26. The Court deduced that the plaintiff was alleging a violation of her Fourth Amendment rights because the Sheriff's deputy forcibly entered her home and removed her possessions without presenting her with a proper warrant or writ. *Id.* at 826. Therefore, the plaintiff's complaint "about the manner in which the judgment against her was executed or carried out" was not found to be inextricably intertwined with the state court's ruling, and *Rooker-Feldman* did not apply. *Id.*

21

In this case, Plaintiff has explicitly alleged claims under 42 U.S.C. sections 1981, 1982, 1985, and 1986 and under 15 U.S.C. section 1681 *et seq*. However, Plaintiff also appears to intend to bring a claim under 42 U.S.C. section 1983 for a violation of the Fourth and Fourteenth Amendments and a state law claim for trespass. Insofar as Plaintiff intends to allege any claims about the foreclosure being wrongful or the actual issuance of the order of eviction being wrongful, he may not do so under *Rooker-Feldman*. Plaintiff had the opportunity to challenge, and did challenge, the eviction order following the dispossessory action initiated by Defendant Wells Fargo in state court. First, Plaintiff appealed the default judgment entered in favor of Wells Fargo granting it possession of the property at issue. Second, Plaintiff brought a separate state court action against the Aldridge Defendants and Wells Fargo alleging wrongful foreclosure– after the dispossessory action had already awarded Defendant Wells Fargo the property. In Count I, Plaintiff alleges a conspiracy by Defendants to deny Plaintiff his due process and equal protection rights in violation of 42 U.S.C. sections 1981, 1985, and 1986. Essentially, Plaintiff is challenging the eviction order entered by then-Judge Levenson as "void." This challenge to a state court's ruling is a direct violation of the *Rooker-Feldman* doctrine because it is essentially requesting this Court set aside the writ of possession issued by the Magistrate Court of Fulton County and the Superior Court of Fulton County. Therefore, Plaintiff's Count I claims

22

are barred by the *Rooker-Feldman* doctrine, and this Court does not have subject matter jurisdiction over them.[7] Similarly, Plaintiff's trespass claim is premised on a finding that Defendants did not follow proper procedures in effectuating the dispossessory action.[8] Because that would mean essentially reviewing the state court's dispossessory proceedings, the trespass claim is also barred by *Rooker-Feldman*.

However, Plaintiff's challenge to the way in which the eviction was carried out is not barred by *Rooker-Feldman*. *Cf. Christophe*, 198 F. App'x at 825 (finding that "the fact that [the plaintiff] lost in court and was to be evicted pursuant to the court's ruling is a separate and distinct issue apart from how that ruling was effectuated by the Sheriff's office" and that the latter issue was not barred by *Rooker-Feldman*). Like the plaintiff in *Christophe*, Plaintiff here has had no opportunity to assert his1983 claims because at the time that he litigated the two state court actions, he did not know

---

[7]Even if the Court did have subject matter jurisdiction over these claims, as discussed more fully below, Plaintiff has failed to state a plausible claim for relief, and they would be dismissed on those grounds.

[8]As more thoroughly discussed below, Plaintiff became a tenant at sufferance following the foreclosure sale. *See Bellamy v. F.D.I.C.*, 236 Ga. App. 747, 750 (1999). Because a landlord-tenant relationship then existed between Wells Fargo and Plaintiff, Wells Fargo was required to follow proper dispossessory procedures to evict Plaintiff. *See Ikomoni v. Executive Asset Management, LLC*, 309 Ga. App. 81, 84 (2011). Plaintiff's only claim for trespass would be that Wells Fargo had not followed the statutory procedures for summary dispossession. *See Vickers v. Merry Land & Inv. Co., Inc.*, 263 Ga. App. 316 (2003).

the manner in which he was to be evicted. Plaintiff has requested relief in the form of "$150,000 being the fair value of his personal property." [11] at ¶ 39(a). Therefore, it seems that Plaintiff intends to allege that the manner in which the eviction was carried out was a violation of his rights. Thus, to the extent that Count II alleges a violation of Plaintiff's Fourth Amendment rights premised upon the way in which the eviction was conducted, that claim is not barred by *Rooker-Feldman*, and this Court retains subject matter jurisdiction over it. Finally, Plaintiff's Count III claim, that Defendants violated 15 U.S.C. section 1681 et seq., is wholly separate from the dispossessory and wrongful foreclosure actions litigated in state court, and the *Rooker-Feldman* doctrine has no bearing on it.

Thus, the undersigned **RECOMMENDS** that Plaintiff's claims under 42 U.S.C. sections 1981, 1982, 1985, and 1986, and under Georgia state law for trespass, be **DISMISSED** for lack of subject matter jurisdiction.[9]

C.      *Res Judicata*

Plaintiff and Defendant Wells Fargo have been involved in two state court lawsuits based on the foreclosure of the property now at issue. One was a

---

[9]Even if the *Rooker-Feldman* doctrine were not applicable, the doctrines of *res judicata* and collateral estoppel bar these claims, as discussed below. Furthermore, Plaintiff's Complaint also fails to meet the federal pleading standards set forth in *Iqbal* and *Twombly*, so his claims are also subject to dismissal for failure to state a plausible claim for relief, also discussed below.

dispossessory action brought by Wells Fargo. The other was a wrongful foreclosure action brought by Plaintiff. In addition, the Aldridge Defendants were a party to the wrongful foreclosure lawsuit. The dispossessory action was decided in favor of Wells Fargo through a default judgment, entered in July 2012 by the Magistrate Court of Fulton County. Def. Ex. D [38-5]. The Superior Court of Fulton County entered a Final Order dismissing the action on December 6, 2012 because "no appeal lies from a default judgment in Magistrate Court." Def. Ex. G [38-8]. On December 7, 2012, the Superior Court of Fulton County entered a Final Order in the wrongful foreclosure proceeding in favor of Wells Fargo and the Aldridge Defendants, dismissing Plaintiff's complaint with prejudice. Def. Ex. J [38-11]. Wells Fargo and the Aldridge Defendants contend that the instant action must be dismissed as against them because it is barred by the doctrine of *res judicata*. The Court agrees that *res judicata* bars Plaintiff's trespass claim and his claims under 42 U.S.C. sections 1981, 1982, 1985, and 1986 as against the Aldridge Defendants and Defendant Wells Fargo.

Under the principle of *res judicata*, or claim preclusion, a final judgment on the merits in a civil action operates to preclude a party, or those in privity with that party, from re-litigating in a subsequent proceeding issues that were or could have been raised in the original action. *Federated Dep't Stores, Inc., v. Moitie*, 452 U.S. 394, 398 (1981); *see Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998).

25

The doctrine is "a rule of fundamental and substantial justice, of public policy and of private peace," operating to protect defendants against duplicative litigation over the same claims, and accordingly, may not be overridden based on equitable considerations. *Federated Dep't Stores, Inc.*, 452 U.S. at 401 (quotation marks omitted). "The doctrine of res judicata is one of finality, providing that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights and responsibilities of the parties and their privies. As to the parties to the prior proceeding and their privies, res judicata constitutes an absolute bar to a subsequent judicial proceeding involving the same cause of action." *Baptiste v. C.I.R.*, 29 F.3d 1533, 1539 (11th Cir. 1994).

Federal courts apply state law to questions of *res judicata*. *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990). In Georgia, the doctrine of *res judicata* applies if the following four elements are present: (1) there is a final judgment on the merits in the first action; (2) the first decision was rendered by a court of competent jurisdiction; (3) the parties to both actions, or those in privity with them, are identical; and (4) the causes of action in both suits are identical, or the claims asserted in both suits arise out of the same events or the same nucleus of operative facts. *Laskar v. Peterson*, 771 F.3d 1291, 1300 (11th Cir. 2014); *Pleming*, 142 F.3d at 1356-57. Significantly, *res judicata* does not bar only those claims actually raised in the first

suit; it also bars those claims which the plaintiff *could* have raised in the prior suit, if those claims arise out of the same transactions or events at issue in the prior suit. *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000). A court may consider the defense of *res judicata* in a motion to dismiss filed pursuant to Rule 12(b)(6) when the existence of the defense can be judged from the face of the complaint. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga*, 708 F.3d 1243, 1253 n.13 (11th Cir. 2013). The court may also take judicial notice of another court's orders in doing so. *See Tuscano v. Evening Journal Ass'n*, 179 F. App'x 621, 623 n.3 (11th Cir. 2006).

The Court agrees with the Aldridge Defendants and Defendant Wells Fargo as to any and all claims Plaintiff is asserting with regard to the issuance of the order of eviction. However, the doctrine of *res judicata* does not bar Plaintiff's claims about the way in which the eviction was carried out– for the same reasons discussed with regard to the *Rooker-Feldman* doctrine. That is, because the state court has already entered a default judgment in favor of Wells Fargo for possession of the property, and because Plaintiff has already fully litigated his wrongful foreclosure claim in state court, where the lawsuit was dismissed with prejudice, *see* Def. Ex. J [38-11], *res judicata* bars re-litigation of these claims or claims that extend out of the same nucleus of operative fact. Although there are slight procedural differences in the two state

court cases and the one at bar, the gravamen of Plaintiffs' claims is the same and, crucially, based on the same facts and transactions as were at issue in state court. Specifically, both this Complaint and Plaintiff's state court claims were based on the fact that the foreclosure was wrongful, that Plaintiff has the right to the property, and that the dispossessory action was wrongly decided. The state court rejected both Plaintiff's challenges to the dispossessory proceeding and Plaintiff's wrongful foreclosure suit with prejudice, and the current claims Plaintiff has made regarding the eviction order, which are based on the same nucleus of operative facts as the state court claims, cannot be considered to challenge the dispossession. Therefore, Plaintiff's trespass claim and his claims under 42 U.S.C. sections 1981, 1982, 1985, and 1986 are barred by *res judicata*.

Though Defendant Wells Fargo contends that any new claims brought by Plaintiff are also barred because those claims could have been brought in the dispossessory proceedings and/or in the wrongful foreclosure lawsuit, the Court cannot wholly agree. The doctrine of *res judicata* "bars subsequent actions as to all matter put in issue or which could have been put in issue." *QOS Networks Ltd. v. Warburg, Pincus & Co.*, 294 Ga. App. 528, 532 (2008). However, Plaintiff has not had the chance to litigate his claim regarding his allegation of "search and seizure"– his 1983 claim– because he did not know at the time of his state court actions, both

of which were dismissed in December 2012, how the eviction itself, which did not occur until December 2013, would be carried out. Furthermore, Plaintiff fails to plead facts with particularly regarding the alleged FCRA violation, so the Court cannot find that the FCRA claim is barred by *res judicata*.

Thus, the Aldridge Defendants and Defendant Wells Fargo have shown, and Plaintiff does not dispute, that all claims but for the section 1983 claim and the FCRA claim are precluded on grounds of *res judicata* as against them. Therefore, Plaintiff's sections 1981, 1982, 1985, 1986, and trespass claims are subject to dismissal as against the Aldridge Defendants and Defendant Wells Fargo.

D.   *Collateral Estoppel*

The Aldridge Defendants and Defendant Wells Fargo further contend that Plaintiff's lawsuit is barred by the doctrine of collateral estoppel. "Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *In re T.M.G.*, 275 Ga. 543, 545 (2002). "Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim– so long as the issue was determined in the previous action and there is identity of the parties, that issue may

not be re-litigated, even as part of a different claim." *Waldroup v. Greene Cnty. Hosp. Auth.*, 265 Ga. 864, 867 (1995).

In this case, the factual issues surrounding Plaintiff's claims regarding the order of eviction are barred by collateral estoppel because the issues regarding the eviction order have been litigated and resolved in favor of the Aldridge Defendants and Defendant Wells Fargo. However, as discussed with regard to both the *Rooker-Feldman* doctrine and *res judicata*, the issues concerning the way in which the eviction order was carried out have not been litigated and resolved. Furthermore, Plaintiff's FCRA claim was not litigated and resolved previously. As such, the Court agrees with the Aldridge Defendants and Defendant Wells Fargo that Plaintiff's claims for trespass and for violations of 42 U.S.C. sections 1981, 1982, 1985, and 1986 are barred by collateral estoppel as against them. However, Plaintiff's FCRA claim and 1983 claim are not barred by collateral estoppel.

E.   *Improper Parties*

1.   Judicial Immunity

Plaintiff brings claims against a former judge for issuing a "void" order of eviction. Plaintiff alleges that then-Judge Levenson did not have a case pending in front of him when he signed the eviction order. Defendant Levenson argues that Plaintiff's claims against him are barred by judicial immunity.

30

The Eleventh Circuit has held that "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id.* Whether a judge's actions were made while acting in his or her judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity. *Scott v. Hayes*, 719 F.2d 1562, 1565-66 (11th Cir. 1983).

There can be no doubt that issuing an order of eviction because of a dispossessory action falls within the normal judicial function of a judge. In fact, Plaintiff's Complaint alleges that Judge Levenson was "the Magistrate Court judge for dispossessory/landlord and tenant cases." Compl. [11] at ¶ 7. Furthermore, there is no allegation that Defendant Levenson acted outside the scope of his judicial function by, for example, encountering Plaintiff somewhere outside of his courtroom or chambers. Moreover, the confrontation clearly arose immediately out of a visit to the judge, by Defendants, in his judicial capacity. However, Plaintiff asserts that there

31

was no case pending before Judge Levenson at the time he issued the order of eviction. *Id.* at ¶ 22(a).

The chronology here is confusing, but Plaintiff's factual allegations and attachments, along with the undisputed publicly-available court orders attached by Defendants, show that the Magistrate Court of Fulton County initially issued a writ of possession in favor of Wells Fargo in July 2012. *See* Def. Ex. D [38-5]. Plaintiff refers to, but does not attach, a November 6, 2013 order issued allegedly without any authority. Defendants attach a copy of what Plaintiff appears to refer to, which is an order dated November 6, 2012. *See* Def. Ex. E [38-6]. This is an order simply denying Plaintiff's motion to vacate the earlier, default order of July 26, 2012. *Id.* The default order itself was apparently the subject of several appeals throughout the state judicial system.

On these facts, it is not clear why Plaintiff believes the Fulton County Magistrate Court did not have a case "pending" as of when it issued its eviction order and therefore issued a "void" order. These labels are purely legal conclusions entitled to no particular weight, and there is no support for those conclusions to be drawn from the exhibits attached either by Plaintiff or Defendants or other factual allegations in the Complaint. Perhaps Plaintiff is questioning why the Magistrate Court would adjudicate a motion to vacate an order when the order itself had already been

32

appealed. At the threshold, a notice of appeal does not necessarily in itself divest the trial court of all jurisdiction over a case. *See, e.g., Duncan v. Ball*, 324 S.E.2d 477, 479 (Ct. App. Ga. 1984). Even if the Fulton County Magistrate Court issued an order that it should not have while the case was on appeal, such an error would not be grounds to personally sue the judge. The action remains fundamentally interrelated with a legitimate judicial matter before the judge. Plaintiff's remedies against such an allegedly "void" order would be to get it overturned by a superior court, not to sue the judge who issued it or the officials who executed it in federal court. Therefore, Plaintiff's claims as against former-Judge Levenson are barred by judicial immunity, and the undersigned **RECOMMENDS** that all claims against Louis Levenson be **DISMISSED**.

Even if Plaintiff's claims against former-Judge Levenson were not barred by judicial immunity, Plaintiff's claims are still subject to dismissal for failure to state a claim, as further discussed below.

2.    Fulton County Marshal's Department Is Not an Entity Capable of Being Sued

Plaintiff brings claims against Fulton County Marshal's Department for wrongful eviction. Though Plaintiff does not make clear which violations he intends to assert against the Fulton County Marshal's Department, the Fulton County

33

Marshal's Department argues that it is not an entity capable of being sued, so any and all claims against it should be dismissed.

"Sheriff's departments and police departments are not usually considered legal entities subject to suit." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citations omitted). However, "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Id.* (citing FED. R. CIV. P. 17(b)). The Georgia Supreme Court has determined that in every action there must be "a legal entity as the real plaintiff and the real defendant." *Georgia Insurers Insolvency Pool v. Elbert Cnty.*, 258 Ga. 317, 318 (1988). Georgia courts recognize only three categories of legal entities: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasiartificial persons as the law recognizes as being capable to sue." *Cravey v. Se. Underwriters Ass'n*, 214 Ga. 450, 453 (1958). Therefore, "[i]f a named defendant or plaintiff is neither a natural person, a corporation, nor a partnership, the suit is improper." *Williams v. Muscogee Cnty. Sheriff's Dept.*, 2009 WL 1457156, at *2 (M.D. Ga. May 22, 2009) (citing *Smith v. Comm'rs of Roads and Revenue of Glynn Cnty.*, 198 Ga. 322, 324 (1944)).

Georgia courts have long held that departments of local governments are not entities with the capacity to be sued. *See, e.g. Brownlee v. Dalton Bd. of Water, Light & Sinking-Fund Comm'rs*, 59 Ga. App. 538, 539 (1939). The department of a local

government, created to discharge the duties of that local government, "is not a separate and distinct corporate entity which is subject to suit for failure to perform, or for the violation of, any duty resting upon it." *Id.* at 539. In Georgia, absent a special act by the General Assembly, non-legal entities, such as school boards, police departments, sheriff's department, and departments of local governments, are not entities with the capacity to be sued. *See, e.g., Valades v. Uslu*, 301 Ga. App. 885, 885 (2010); *Means v. City of Atlanta Police Dep't*, 262 Ga. App. 700, 703 (2003); *Cook v. Colquitt Cnty. Bd. of Educ.*, 261 Ga. 841, 841 (1992); *Tidwell v. Coweta Cnty. Bd. of Educ.*, 240 Ga. App. 55, 56 (1999); *Williams*, 2009 WL 1457156, at \*2; *Brownlee*, 59 Ga. App. at 539.

In this case, Plaintiff has sued the Fulton County Marshal's Department. The Fulton County Marshal's Department, however, is not a natural person, corporation, or partnership. As such, under Georgia state law, the Fulton County Marshal's Department is not an entity that is capable of suing or being sued. Plaintiff does not point to any special act of the General Assembly conferring the capacity to be sued on the Fulton County Marshal's Department, and this Court has found no such special act. Therefore, the undersigned **RECOMMENDS** that all claims against the Fulton County Marshal's Department be **DISMISSED**.

Even if Plaintiff could sue the Fulton County Marshal's Department, Plaintiff's claims should be dismissed for failure to state a plausible claim for relief, as discussed below.

### 3.   The Aldridge Defendants

Plaintiff brings claims against the Aldridge Defendants, the attorneys for Defendant Wells Fargo in the state law proceedings, for conspiring with then-Judge Levenson "to willfully interfere with and deny Plaintiff's due process right of appeal by issuing a void order to effectuate the wrongful and unlawful eviction of Plaintiff's premises." Compl. [11] at ¶ 22. The Aldridge Defendants contend that they are not a proper party to the action because they merely acted as counsel in the foreclosure proceedings and that any claims against them should be dismissed as a matter of law. Moreover, they argue that Plaintiff fails to allege a single action taken by the Aldridge Defendants in this matter.

The Aldridge Defendants cite to *McCalla, Raymer, Padrick, Nichols & Clark, L.L.C. v. C.I.T. Financial Services, Inc.*, 235 Ga. App. 95 (1998) for the proposition that the Aldridge Defendants are not proper parties to this action. The *McCalla* case, however, is inapplicable to the case at bar. In *McCalla*, the attorneys for a security deed holder commenced an interpleader action to determine the proper disbursement of surplus funds from a foreclosure sale. *Id.* at 95. The *McCalla* court reasoned that

when an attorney is merely holding money for his client, the attorney is not a proper party because "an attorney's possession of the money of his client is more like that of a mere agent or bailee." *Id.* at 96 (internal quotation marks omitted). The Aldridge Defendants argue that because the *McCalla* court found that the attorneys were not a proper party to a wrongful foreclosure claim, that means that, as a matter of law, the Aldridge Defendants are not a proper party to this action. This Court disagrees. In the *McCalla* case, there was no allegation that the foreclosing creditor's attorneys were involved in a conspiracy, or in any other wrongdoing. Instead, the debtor alleged in its answer to the impleader action filed by the creditor's attorneys that the foreclosure was wrongful. *Id.* at 95. The debtor did not allege that the creditor's attorneys were at fault or were in any way engaged in unlawful action. By contrast, Plaintiff Enwonwu has alleged that the Aldridge Defendants were involved in a conspiracy with then-Judge Levenson, and others, to issue a void order and wrongfully evict him. Therefore, the Aldridge Defendants' argument that they are not proper parties as a matter of law is incorrect.[10]

---

[10]However, their argument that Plaintiff fails to allege a single action taken by the Aldridge Defendants is considered in more detail below in assessing whether Plaintiff has stated a plausible claim for relief.

F.    *Plaintiff's Shotgun Complaint*

The Aldridge Defendants and Defendant Wells Fargo argue that Plaintiff's Complaint is an impermissible "shotgun" pleading and that it must be dismissed on that ground. Plaintiff's Complaint, though sixteen pages long, only alleges three counts against all eight named Defendants. The undersigned agrees with Defendants and finds that Plaintiff's Complaint is a shotgun pleading, which the Eleventh Circuit has consistently rejected for failure to meet the pleading standards of the Federal Rules of Civil Procedure.

A shotgun pleading is defined by "the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x. 368, 371 (11th Cir. 2005) (unpublished). Shotgun pleadings typically "contain several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). As a result, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" when a plaintiff presents a shotgun pleading. *Anderson v. District Bd. of Trs. of Central Fla. Community Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Shotgun pleadings also characteristically fail to specify which defendant is responsible for each act alleged. *Beckwith*, 146 F. App'x at 372 ("It is virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant."). The Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed]" shotgun pleadings, because such pleadings "wreak havoc on the judicial system." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008); *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001).

In this case, Plaintiff filed a Complaint alleging claims against eight separate Defendants. However, Plaintiff fails to articulate which claims he intends to allege against which Defendants or how the claims are applicable to some of the Defendants at all. For example, Plaintiff's enumerated counts all allege "conspiracy" but they fail to explain who is involved in which conspiracy. Aside from at one point stating that the Aldridge Defendants conspired with then-Magistrate Judge Louis Levenson to issue a "void" order, Plaintiff does not explain which Defendant committed which violation. With regard to Count III, Plaintiff alleges a violation of the FCRA, claiming "Defendants maliciously published in Plaintiff's national consumer credit reports that Plaintiff defaulted in the loan." Compl. [11] at ¶ 35. Again, however, Plaintiff does not indicate which Defendants violated the FCRA, nor does he indicate which portion of the FCRA any of the Defendants have violated. Furthermore, Plaintiff's allegations

include multiple paragraphs documenting previous litigation between Plaintiff and Defendants. Plaintiff's Complaint also alleges wrongful and "malicious" eviction and trespass, but nowhere does Plaintiff clearly state that he intends to bring any state law claims. Compl. [11] at ¶ 16; *id.* at 11. Similarly, Plaintiff cites to "OCGA §§ 44-14-161 et seq." in the Complaint, but Plaintiff never actually purports to bring a claim under the statute. *Id.* at ¶ 22(c).

As such, Plaintiff has filed a shotgun pleading that fails to set forth with any clarity the claims he is asserting or the factual allegations in support of each claim. Accordingly, the undersigned **RECOMMENDS** that the Motions to Dismiss [33] [38] [39] be **GRANTED** on that ground.[11]

Furthermore, even if Plaintiff's Complaint were not a shotgun pleading, the Court finds that he has failed to state a claim for relief under any of the legal theories presented in the Complaint.

G.     *Plaintiff's Claims*

Plaintiff's claims, at their core, all amount to the sole contention that he was improperly and wrongfully evicted from his home. The Court, however, analyzes each

---

[11] Because it is clear that the Plaintiff's claims are meritless, as explained below, it would be futile to permit Plaintiff an opportunity to cure the shotgun complaint by more clearly detailing what claims are asserted against which Defendants.

Count charged in Plaintiff's Complaint and evaluates Plaintiff's other potential claims derived from the Complaint.

1.    Counts I and II: 42 U.S.C. §§ 1981, 1982, 1985, and 1986

Plaintiff brings claims under 42 U.S.C. sections 1981, 1982, 1985, and 1986, alleging that Defendants conspired to deny him equal protection and due process. In essence, Plaintiff argues that Judge Levenson conspired with the Aldridge Defendants to deny Plaintiff his right to appeal, as evidenced by Judge Levenson's issuance of "a void order to effectuate the wrongful and unlawful eviction" of Plaintiff. Compl. [11] at ¶ 22. Plaintiff further contends that "Lieutenant Johnston leading other officers from the Fulton County Marshal's department . . . demanded entry into Plaintiff's home in the name of the State of Georgia" and "invited the Wells Fargo eviction crew who took over the removal and wanton destruction of Plaintiff's property." *Id.* at ¶¶ 26-27. Defendants argue that Plaintiff has failed to plead sufficient facts to sustain a claim under sections 1981, 1982, 1985, and 1986 because Plaintiff does not allege that the foreclosure or dispossessory actions were due to discrimination or that Defendants were motivated by a racial or class-based discriminatory animus. Furthermore, Defendants contend that Plaintiff has not alleged a conspiracy either designed to obstruct justice or to interfere with the equal protection of the laws.

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Section 1982 prohibits race discrimination in the purchase and sale of goods by providing that "[a]ll citizens . . . shall have the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To state a claim under 42 U.S.C. section 1982, a plaintiff must "demonstrate that he was deprived of his property interest because of an intentional act based on racial animus." *Humphrey v. United Parcel Service*, 200 F. App'x 950, 952 (11th Cir. 2006) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1543 (11th Cir. 1994)). Section 1985 prohibits two or more persons from conspiring to deprive another of the equal protection of the laws. 42 U.S.C. § 1985. It provides generally that

> in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

Section 1985(2) describes two broad categories of conspiracies. *Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981) (citing *Brawer v. Horowitz*, 535 F.2d 830, 839-40 (3d Cir. 1976)). The first clauses of section 1985(2) "describe conspiracies that are

designed to obstruct the course of justice in the federal judicial system." *Id.* The last two clauses "describe conspiracies designed to interfere with the equal protection of the laws." *Id.* at 801. Finally, section 1986 imposes liability on individuals with knowledge of others conspiring to deprive others of the equal protection of the laws. 42 U.S.C. § 1986. Section 1986 requires the existence of a valid claim under section 1985. *Bradt*, 634 F.2d at 799, n.3.

In this case, with regard to all Defendants, Plaintiff fails to state a claim under sections 1981 and 1982 because he fails to allege, even in conclusory fashion, that he was discriminated against based on race or some other class-based animus. Indeed, Plaintiff only references race in passing, at the outset of the Complaint. *See* Compl. [11] at ¶ 4. Though Plaintiff alleges that he "is a Black male, a U.S. citizen of Nigerian national origin," that does not amount to an allegation that Plaintiff was discriminated against *because* he is a black male of Nigerian national origin. *Id.* Nor does Plaintiff allege any other facts that would even raise an inference of race discrimination.

Plaintiff's section 1985 and 1986 claims fail for similar reasons. Although Plaintiff has alleged a conspiracy of sorts, claiming that the Aldridge Defendants and Judge Levenson conspired to issue a void order, he fails to allege any facts supporting that claim. Therefore, it is unclear which provision of section 1985 Plaintiff intends to bring a claim under. The conclusory assertion that there was a conspiracy, without

more, does not meet the pleading standard set out in *Iqbal* and *Twombly*, and Plaintiff's section 1985 claim fails. Because section 1986 claims cannot exist without a valid claim under section 1985, and because, again, the conspiracy allegation is nothing more than a conclusory assertion, Plaintiff's section 1986 claim fails to state a plausible claim for relief as well.

2.      Malicious Eviction/Trespass/Search and Seizure

In Count II, Plaintiff asserts claims of "conspiracy trespass, malicious eviction, [and] search and siezure [sic]." Compl. [11] at 11. Although Plaintiff only cites to 42 U.S.C. sections 1982, 1985, and 1986, this Court considers Plaintiff's trespass/eviction and search and seizure claims. Plaintiff's argument seems to be that Defendants maliciously evicted Plaintiff. Defendant alleges that the eviction was wrongful because (1) Plaintiff had an appeal pending at the time of eviction, (2) Defendants had objected to Plaintiff's poverty affidavit, and (3) then-Judge Levenson entered a "void" eviction order. Defendants argue that "search and seizure" must refer to the Fourth Amendment, not the Fourteenth Amendment, and that any malicious eviction/trespass claim fails because the Fulton County Marshal's Department executed an eviction order signed by then-Judge Levenson– and nothing more. The Court agrees with Defendants as to the malicious eviction/trespass claim, and further

concludes that Plaintiff's search and seizure claim, construed as a violation of 42 U.S.C. section 1983, fails to state a plausible claim for relief.

"Where former owners of real property remain in possession after a foreclosure sale, they become tenants at sufferance." *Bellamy v. F.D.I.C.*, 236 Ga. App. 747, 750 (1999). At that point, "[a] landlord-tenant relationship exists between a legal title holder and a tenant at sufferance such that the dispossessory procedures set forth in OCGA §44-7-50 et seq. are applicable." *Ikomoni v. Executive Asset Management, LLC*, 309 Ga. App. 81, 84 (2011). If an owner forcibly dispossesses a tenant without following statutory procedures for summary dispossession, the owner is subject to an action for trespass. *Vickers v. Merry Land & Inv. Co., Inc.*, 263 Ga. App. 316, 317 (2003). Under Georgia law, malicious eviction "constitutes a trespass . . . sounding in tort against the landlord." *See Hall v. John Hancock Mut. Life Ins. Co.*, 50 Ga. App. 625, 625 (1935); *see also Mizell v. Byington*, 73 Ga. App. 872, 875(1946).

Although Plaintiff does not make clear against which Defendants he intends to assert his claims under 42 U.S.C. section 1983 and Georgia trespass law, Plaintiff has failed to state a plausible claim for relief against any of the Defendants. Plaintiff has alleged "conspiracy trespass" against Defendants apparently based on the fact that then-Judge Levenson's eviction order was carried out by Lieutenant Johnston and the Fulton County Marshal's Department. Compl. [11] at ¶¶ 25-26. Plaintiff further

alleges that "Lieutenant Johnston invited the Wells Fargo eviction crew" into the home and that they "took over the removal and wanton destruction of Plaintiff's property." *Id.* at ¶ 27. Plaintiff's Complaint indicates that then-Judge Levenson, as a Magistrate Judge in Fulton County, entered a default judgment against Plaintiff, thereby granting Defendant Wells Fargo's dispossessory action. *Id.* at ¶ 21. The foreclosure sale took place on September 6, 2011, and Wells Fargo, the highest bidder for cash at the sale, became the owner of the property. *See id.* at 20; Enwonwu's Exhibit 3. Therefore, at the time that then-Judge Levenson entered a default judgment in favor of Wells Fargo, Wells Fargo was the proper owner of the property, and Plaintiff was a tenant at sufferance.

Plaintiff does not allege that Defendants failed to follow statutory procedures for dispossession. And, in fact, it is clear from both Plaintiff and Defendants' attachments that Defendant Wells Fargo followed statutory procedures for dispossession as required by Georgia state law. That is, Defendant Wells Fargo brought a dispossessory action in the Magistrate Court of Fulton County, and a default judgment was entered in its favor. Plaintiff appealed this action, but it was found that no appeal will lie from entry of a default judgment. Although Plaintiff argues that he was "wrongfully", Compl. [11] at ¶ 16, evicted and that then-Judge Levenson was "without jurisdiction and/or a judgment to enforce" when he issued "a void order", *id.*

at ¶ 22, these conclusory allegations are not enough to sustain a claim for trespass and malicious eviction. There are no facts before this Court that indicate Defendants failed to follow statutory procedures for dispossession. Thus, Plaintiff's apparent claim for trespass is subject to dismissal for failure to state a plausible claim for relief.

Furthermore, as noted above, a claim for "malicious eviction" is not different from a claim of "trespass." *See Evans v. Better Homes and Gardens Real Estate, LLC*, 2014 WL 11858176, at *9 (N.D. Ga. May 29, 2014), *adopted at* 2014 WL 12013444 (N.D. Ga. Aug. 5, 2014). As such, any claim for "malicious eviction" would fail for the same reasons Plaintiff's trespass claim fails, and it should be dismissed for failure to state a plausible claim for relief.

Section 1983 gives individuals the ability to sue persons "who, under color of" law act to deprive the individual "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Initiation of foreclosure proceedings pursuant to a mortgage implicates no . . . 'authority of state law'" when there is no pre-adjudicative seizure of property. *Earnest v. Lowentritt*, 690 F.2d 1198, 1201 (5th Cir. 1982) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Furthermore, a public official who acts pursuant to a court directive is generally immune from suit, "such as a sheriff seizing property." *Farmer v. Lawson*, 510 F. Supp. 91, 95 (N.D. Ga. 1981); *see also Tymiak v. Omodt*, 676 F.2d 306, 308 (8th Cir. 1982) (affirming the

district court's holding that the sheriff who evicted the plaintiff pursuant to court order was immune from the plaintiff's section 1983 claims for damages). "[P]olice officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986). Moreover, "[t]he proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution." *Id.*

The undersigned has construed Plaintiff's claim of unlawful search and seizure to be an attempt to bring a claim under 42 U.S.C. section 1983. Though, again, it is not clear against which Defendant(s) Plaintiff intends to bring this claim, Plaintiff appears to focus on the actions of Lieutenant Johnston, the Fulton County Marshal's department, then-Judge Levenson, and "the Wells Fargo eviction crew." Compl. [11] at ¶¶ 25-27. Here, Plaintiff alleges no facts to support his claim that there was a wrongful search and seizure of his property. As noted above with regard to Plaintiff's trespass/malicious eviction claim, Plaintiff makes only conclusory allegations of wrongdoing, focusing on the fact that "Judge Levenson had no case pending in his court between the parties . . . [and] therefore, had no basis to order an eviction." *Id.* at ¶ 26. Plaintiff's conclusory allegations that the order was somehow "void," without

more, fail to state a plausible claim for relief under section 1983. *See Earnest*, 690 F.2d at 1201 (finding that the record was "totally devoid of any facts at all to support a finding that the state judge was improperly or maliciously involved in the foreclosure" such that "[a]ny assertion of illegal motive on the part of the judge is purely conclusory . . . [and] unsupported by any pleaded facts"). Furthermore, Plaintiff does not contest that Lieutenant Johnston and the Fulton County Marshal's Department were following an eviction order issued by a Magistrate Judge for Fulton County. As such, even if Plaintiff had alleged any facts to support his claim that the eviction order was "wrongful," he would still fail to state a claim against those who effectuated the court's order. Once the Fulton County Marshals initiated the eviction and allowed Wells Fargo, the owner of the property at the time, to enter the home, Plaintiff's proper recourse was to appeal the Magistrate Court of Fulton County's decision.

Insofar as Plaintiff asserts claims against the Aldridge Defendants, he has failed to state any kind of plausible claim for relief against them. Although, as discussed previously, it is not clear which claims Plaintiff intends to bring against the Aldridge Defendants, the Complaint itself only makes one allegation regarding them: that "[Magistrate Court Judge] Louis Levenson conspired with the attorneys for the law firm Aldridge Connors to willfully interfere with and deny Plaintiff's due process

49

right of appeal by issuing a void order to effectuate the wrongful and unlawful eviction of Plaintiff's premises at 1950 Branch Valley Drive, Roswell, Georgia 30076 on December 12, 2013." Compl. [11] at ¶ 22. Because Plaintiff has failed to allege any actions taken by the Aldridge Defendants, aside from a conclusory assertion that they conspired with then-Judge Levenson, Plaintiff has failed to state a plausible claim for relief against the Aldridge Defendants.

### 3.    Count III: FCRA (15 U.S.C. § 1681)

Plaintiff alleges that "Defendants maliciously published in Plaintiff's national consumer credit reports that Plaintiff defaulted in the loan they conceded was made to Edith Enwonwu, alone." Compl. [11] at ¶ 35. Plaintiff references the "Note" and claims it is attached and marked as Enwonwu's Exhibit 7, but there is no Exhibit 7 attached to Plaintiff's Complaint. In fact, Plaintiff attaches documents indicating that he and Edith Enwonwu both signed the Security Deed. *See id.* at 27-34. Defendants argue that Plaintiff has failed to allege facts indicating what information was allegedly published and which Defendant published the information, and that Plaintiff's claim fails as a matter of law because Plaintiff failed to notify the furnisher of a dispute about the inaccuracy of the credit report. Furthermore, Defendant Wells Fargo contends that the FCRA does not apply to mortgage lenders, like Wells Fargo.

From Plaintiff's Complaint, it is unclear whether he intends to assert that Defendant Wells Fargo itself published a consumer credit report, or whether he intends to assert that Defendant Wells Fargo (or one of the other Defendants) furnished information to a consumer reporting agency. The undersigned will address each potential allegation. Plaintiff may intend to allege a claim under 15 U.S.C. section 1681s-2(a)(3). This statute addresses the responsibilities of furnishers of information to consumer reporting agencies. 15 U.S.C. § 1681s-2. Under the FCRA, no consumer may bring any action with respect to the reporting of information against any person who furnishes information to a credit reporting agency, "except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Although Plaintiff alleges that "Defendants maliciously published in Plaintiff's national consumer credit reports that Plaintiff defaulted" on the loan, the conclusory allegation is not enough to sustain a claim under 15 U.S.C. section 1681s-2.

Even assuming that Plaintiff's allegations could be interpreted as asserting that Defendants provided false information to a credit reporting agency with malice or with the intent to injure him, the specific section of the FCRA that prohibits any person from providing false or inaccurate information to a credit reporting agency

does not provide a private cause of action to consumers. *See* 15 U.S.C. § 1681s-2(a)(1)(A).

> The Plaintiff attempts to assert a cause of action for violation of 15 U.S.C. § 1681s-2(a)(1)(A) and (B) prohibiting the furnishing of information relating to a consumer to any consumer reporting agency if the person knows or has reasonable belief that the information is inaccurate, or after notice by the consumer that the information is inaccurate. Sections 1681n and *o* respectively, address civil liability for willful and negligent noncompliance. Section 1681s-2c states that the sections regarding civil liability for noncompliance, §§ 1681n and *o*, do not apply to violations of § 1681s-2(a). Pursuant to § 1681s-2(d), the provisions of § 1681s-2(a) may be enforced exclusively as provided under § 1681s by the Federal agencies and officials and the State officials identified therein. *In other words, there is no private right of action under 15 U.S.C. § 1681s-2(a)(1)(A) and (B).* As a result, Plaintiff's allegations cannot support this cause of action as a matter of law, and the Court will dismiss Count VI with prejudice.

*Antoine v. State Farm Mutual Automobile Ins. Co.*, 662 F. Supp. 2d 1318, 1327 (M.D. Fla. 2009) (emphasis added); *see also Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009) (although "the FCRA prohibits furnishers of credit information from providing false information," the "statute bars private suits for violations of this provision" (citing 15 U.S.C. §§ 1681s-2(a), 1681s-2(c), and 1681s(c)(1)(B) (allowing states to bring an action for violations)). Thus, there is no private cause of action under the FCRA for furnishing false or inaccurate information to a credit reporting agency, and Plaintiff's claim must be dismissed on that ground.

15 U.S.C. sections 1681n, 1681*o*, and 1681s-2(c) provide consumers with a private right of action against a furnisher of information if the furnisher fails to fulfill its requirements under section 1681s-2(b). *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 867 (11th Cir. 2011). Section 1681s-2(b) enumerates the duties of furnishers of information *upon notice of dispute*. That is, "[t]o trigger the furnisher's responsibilities under § 1681s-2(b) . . . the consumer must have notified the furnisher of a dispute about the inaccuracy of the credit report." *Sampson*, 453 F. App'x at 867. In this case, Plaintiff has alleged no facts to indicate that he notified any of the Defendants about the inaccuracy of the credit report. Without that, Plaintiff has failed to state a claim under section 1681s-2(b) of the FCRA.

Plaintiff may be attempting to assert a claim under 15 U.S.C. section 1681i, alleging that Defendant Wells Fargo actually acted as a consumer reporting agency in publishing information about Plaintiff. According to 15 U.S.C. section 1681i, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). In order to state a claim under 15 U.S.C. section

1681i, a plaintiff must allege that the consumer reporting agency failed to reinvestigate the consumer's credit history upon request, *Peart*, 345 F. App'x at 386, and that "a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry," *Cahlin v. General Motors Acceptance Corporation*, 936 F.2d 1151, 1160 (11th Cir. 1991).

This claim, too, however, fails because "where the Bank has reported information solely on its own experience with one of its customers, the Bank is not acting as a 'consumer reporting agency,' within the meaning of the Fair Credit Reporting Act, because . . . it has not furnished a 'consumer report' as that term is defined in the Act." *Smith v. First Nat. Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir. 1988). In *Smith*, 837 F.2d at 1578, the Eleventh Circuit found that the defendant-bank "did no more than furnish information regarding an account . . . to a credit reporting agency" and that was not enough to "make the Bank's information a consumer report." Moreover, Plaintiff nowhere alleges facts indicating that he disputed the information published by Defendants– let alone what the incomplete or

inaccurate information was. Therefore, any claim Plaintiff is attempting to bring under 15 U.S.C. section 1681 fails.[12]

   H.   *Plaintiff's Motions*

   In addition to the Motions to Dismiss filed by Defendants, the Plaintiff has filed the following motions which are also pending before the Court: the Motion for an Order of Court that the Parties Engage in Discovery [45] and the Motion for Extension of Time to respond to Defendants' Motions to Dismiss [46].

   1.   Motion to Engage in Discovery

   In the Motion to Engage in Discovery [45], Plaintiff asks the Court "[t]o vacate the Order entered on 26th day of August 2016 granting Defendants' Motion to Extend Rule 26 Deadlines as the motion was brought mala fides." Pl. Mot. [45] at 1. Plaintiff further requests that the Court "[o]rder the parties to engage in discovery under the usual 4 (four) months discovery period allowed for cases arising under 42 U.S.C. §§ 1981, 1982, 1985 AND [sic] 1986." *Id.* at 2.

   Under the Local Rules of this Court, the discovery period generally begins thirty days after the first defendant appears by filing an Answer. LR 26.2, NDGa. In

---

[12]Having established that Plaintiff has failed to state any plausible claims for relief, the issues of damages and attorneys' fees, addressed in Defendants' Motions to Dismiss, are moot. *See, e.g., Monticello v. Winnebago Industries, Inc.*, 369 F. Supp. 2d 1350, 1362 (N.D Ga. 2005); *J. Kinson Cook of Georgia, Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 561 (2007).

this case, the Aldridge Defendants filed their Answers [29, 30, 31, 32] on August 2, 2016, and filed a Motion for Extension of Time to Extend Rule 26 Deadlines [34] on the same date. The Motion was unopposed by Plaintiff. Therefore, on August 29, 2016, the undersigned entered an Order granting the Aldridge Defendants' Motion to Extend for thirty (30) days after the Court enters an Order on Defendants' Motion to Dismiss. *See* Order [40] at 2.

Because Plaintiff failed to timely oppose the motion, and offers no reason as to why the Court should overturn its Order. Furthermore, Plaintiff's Motion to Engage in Discovery is moot because the undersigned has recommended granting all Defendants Motions to Dismiss. Therefore, Plaintiff's Motion [45] is **DENIED**.

> 2. Motion for Extension of Time to Respond to Defendants' Motions to Dismiss

In the Motion for Extension of Time [46], Plaintiff requests that the Court extend "the time within which he may respond to the motions by the respective Defendants seeking to dismiss the instant action." Pl. Mot. [46] at 1. The Aldridge Defendants filed their Motion to Dismiss on August 2, 2016, and Plaintiff failed to file a response by the response date, August 19, 2016. Plaintiff filed this Motion on September 26, 2016, and on September 29, 2016, without leave of the Court, he filed an "Objection to Defendants' Motions to Dismisiss [sic]." Pl. Resp. [47]. Plaintiff's

Motion [46] explains that Plaintiff "since January 2014 . . . spends most of his time either in dialysis or in other medical appointments/treatment" and that "following the death of his sister on December 27, 2015, Plaintiff's live [sic] went into a further downward spiral." Pl. Mot. [46] at 1-2. Plaintiff's Motion requests fourteen days within which to file his responses. *Id.* at 2.

Plaintiff's Response [47] essentially contends that Defendants' Motions to Dismiss contain "new facts" and should therefore "be treated as motions for summary judgment." Pl. Resp. [47] at 1-2. Plaintiff again requests that the parties engage in discovery. *Id.* at 2. As explained in detail above, however, the exhibits Defendants attach to their Motions to Dismiss may properly be considered by this Court on a Motion to Dismiss. Because the undersigned is recommending dismissal of this lawsuit with prejudice, Plaintiff's Motion [46] is **DENIED** as moot.

## III.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Defendants' Motions to Dismiss [33][38][39] be **GRANTED**, and that this action be **DISMISSED** in its entirety.

**IT IS RECOMMENDED** that all claims be **DISMISSED** for failure to state a claim because Plaintiff filed a shotgun pleading that does not plead sufficient facts to state a plausible claim for relief. Furthermore, Plaintiff's Count I and trespass

claims are barred by the *Rooker-Feldman* doctrine, and then-Judge Levenson and the Fulton County Marshal's Department are improper parties to this action.

Plaintiff's Motion to Engage in Discovery [45] and Motion for Extension of Time to Respond to Defendants' Motions to Dismiss [46] are **DENIED**.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO ORDERED and RECOMMENDED** this 27th day of October, 2016.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE